FILED

MAY 29 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.   NC-14-1376-DKiTa |
| | ) | |
| LIONEL BEA, | ) | Bk. No.   14-41272-MEH13 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| MARTHA G. BRONITSKY, | ) | |
| Chapter 13 Trustee, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| LIONEL BEA, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| _____ | ) | |

Argued and Submitted on May 14, 2015
at San Francisco, California

Filed – May 29, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Hon. M. Elaine Hammond, Bankruptcy Judge, Presiding

Appearances:     Leo G. Spanos argued for appellant, Martha G. Bronitsky, Chapter 13 Trustee; Andrew Christensen of The Cline Law Group LLP, argued for appellee Lionel Bea.

Before:   DUNN, KIRSCHER AND TAYLOR, Bankruptcy Judges.

DUNN, Bankruptcy Judge:

Martha G. Bronitsky, the chapter 13[1] trustee ("Trustee"), appeals the bankruptcy court's orders overruling her objection to confirmation of the Debtor's First Amended Chapter 13 Plan ("Plan") and confirming the Plan.  We AFFIRM as to both orders.

## I. FACTS

The facts underlying this appeal are not in dispute.  The Debtor, Lionel Bea, filed his chapter 13 petition on March 25, 2014.  He filed the Plan on May 13, 2014.  The Plan proposed payments of $584 for 60 months.  The Plan pays $3,000 in attorneys fees, a total of $7,020 to claimants holding claims secured by the Debtor's personal property, $4,380 in domestic support arrears, and $15,190 in priority tax claims.  Unsecured creditors are projected to receive 0% on their claims under the Plan.

Under Section 2.05 of the Plan, the three nonpurchase money secured creditors (collectively, "Secured Creditors") are treated as follows: The City of Oakland is to receive a total of $995, payable $83 per month at 0% interest.  The California Franchise Tax Board ("FTB") is to receive a total of $325, payable $28 per month at 0% interest.  The Internal Revenue Service ("IRS") is to receive payments of $382 per month to pay its allowed secured

---

[1] Unless specified otherwise, all chapter, section and rule references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

2

claim of $5,700 at 3% interest. The Secured Creditors will retain their liens until their allowed secured claims are paid in full. The Debtor anticipates that the fixed equal monthly payments provided for in Section 2.05 of the Plan will pay the IRS in full in about 15 months and the City of Oakland and the FTB in full in about 12 months each. However, under Section 5.01 of the Plan, the fixed monthly payments to the Secured Creditors do not begin until month seven of the Plan, in order to allow the Debtor's $3,000 in outstanding attorneys fees to be paid first. None of the three Secured Creditors objected to the Plan.

The Trustee objected to the Plan on the ground that it was contrary to requirements of the Bankruptcy Code in that the deferred payments to the Secured Creditors under the Plan did not provide them with adequate protection during the first six months of the Plan as required by § 1325(a)(5)(B)(iii)(II). The Debtor responded that § 1325(a)(5) was satisfied in that the Secured Creditors in effect accepted the Plan by not filing objections.

The bankruptcy court heard argument on the Trustee's Plan objection on June 24, 2014, and ruled orally. The bankruptcy court held that Ninth Circuit authority supported its conclusion that a secured creditor's failure to object to its treatment in a chapter 13 plan generally "translates into acceptance of the plan by the secured creditor." It further concluded that the Supreme Court's decision in United Student Aid Funds, Inc. v. Espinosa, 130 S.Ct. 1367 (2010), did not require a different result in this case. Accordingly, the bankruptcy court overruled the Trustee's objection to the Plan.

On June 27, 2014, the bankruptcy court entered its order

3

overruling the Trustee's objection and setting forth its findings and conclusions.  It entered its order confirming the Plan on July 1, 2014.  The Trustee timely appealed both orders.  At oral argument, Debtor's counsel confirmed that Debtor's outstanding attorneys fees provided for in the Plan were paid in full, and payments to the three Secured Creditors have commenced.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(L).  We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

While the parties have stated the issues before us in a number of ways, we characterize the issues before us in this appeal as follows:

1) Does a chapter 13 plan necessarily violate the Bankruptcy Code if it provides that equal payments to secured creditors start later than the first plan payment?

2) If a secured creditor does not object to a delay in the start of equal payments to it under a chapter 13 plan, does such failure to object constitute acceptance of its treatment under the plan for purposes of § 1325(a)(5)(A)?

## IV. STANDARDS FOR REVIEW

We review the bankruptcy court's legal conclusions, including its interpretation of provisions of the Bankruptcy Code, de novo and its findings of fact for clear error.  Arnold v. Gill (In re Arnold), 252 B.R. 778, 784 (9th Cir. BAP 2000).

## V. DISCUSSION

The Trustee argues that it was error for the bankruptcy

4

court to confirm the Plan where the Plan did not provide adequate protection to the Secured Creditors through equal payments commencing with the first Plan payment due, as required under § 1325(a)(5)(B)(iii)(II), in light of the Supreme Court's decision in United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260 (2010). The Debtor argued, and the bankruptcy court agreed, that the allowed claims of secured creditors can be satisfied in three alternative ways in a chapter 13 plan: a) by secured creditor acceptance of its treatment under the plan (§ 1325(a)(5)(A)); b) by surrender of the secured creditor's collateral (§ 1325(a)(5)(C)); or c) by the secured creditor retaining its lien on its collateral until its allowed secured claim is paid in full during the term of the plan (§ 1325(a)(5)(B)). Since none of the Secured Creditors objected to their treatment in the Plan, the bankruptcy court concluded, under Ninth Circuit and other authority, that the Secured Creditors had accepted the Plan, and the alternative provided by § 1325(a)(5)(A) was satisfied. We agree for the following reasons.

In Espinosa, the Supreme Court was confronted with the following situation: The debtor, Francisco Espinosa, had student loan debt. Mr. Espinosa filed for protection under chapter 13 and in his chapter 13 plan, proposed to pay the principal of his student loan debt over the life of the plan but further provided that once the principal had been paid, any accrued interest would be discharged. Notice and a copy of Mr. Espinosa's plan were provided to the student loan creditor, United Student Aid Funds, Inc. ("United"). In bold typeface immediately beneath the

5

caption of the plan was stated: "WARNING IF YOU ARE A CREDITOR YOUR RIGHTS MAY BE IMPAIRED BY THIS PLAN." The plan further noted the deadlines for filing proofs of claim and objections to confirmation of the plan. Id. at 265.

United received the notice and filed a proof of claim in an amount representing both unpaid principal and accrued interest on Mr. Espinosa's student loan debt. However, United did not object either to confirmation of Mr. Espinosa's chapter 13 plan or to his failure to initiate an adversary proceeding to seek a determination that his student loan debt was dischargeable, imposing an undue hardship on him, as required under § 523(a)(8).

The bankruptcy court confirmed Mr. Espinosa's plan. One month later, the chapter 13 trustee sent United a form notice stating that "[t]he amount of the claim differs from the amount listed for payment in the plan," and "[y]our claim will be paid as listed in the plan." Id. United did not appeal the confirmation order and did not respond to the trustee's notice. Thereafter, Mr. Espinosa made all payments required under his plan and received a discharge.

Three years later, the United States Department of Education commenced efforts to collect the unpaid interest on Mr. Espinosa's student loan debt. Mr. Espinosa filed a motion in the bankruptcy court to enforce the discharge order "by directing the Department and United to cease all efforts to collect the unpaid interest on his student loan debt." Id. at 266. United opposed and filed a cross-motion to vacate the confirmation order under Civil Rule 60(b)(4), applicable in bankruptcy under Rule 9024, as void. It argued that Mr. Espinosa's chapter 13 plan was

6

inconsistent with the Bankruptcy Code requirement to make undue hardship findings before discharging student loan debt, citing §§ 523(a)(8) and 1328(a)(2). It further argued that confirmation of the plan violated requirements of the Rules, in that undue hardship findings must be made in the context of an adversary proceeding (Rule 7001(6)), and that United was not properly served with a summons and complaint (see Rules 7003 and 7004). Id. at 266.

The bankruptcy court ruled in favor of Mr. Espinosa and against United. On appeal, the district court reversed, holding that United was denied due process because the confirmation order was entered without service of a summons and complaint as the Rules required. On further appeal, the Ninth Circuit reversed. It concluded that United had adequate notice of the plan. Even if United had a meritorious objection and basis for appeal, it was bound by the plan when it neither objected nor appealed. Id. at 266-67.

The Supreme Court granted certiorari and affirmed the Ninth Circuit in a unanimous decision, noting that Civil Rule 60(b)(4) "does not provide a license for litigants to sleep on their rights." Id. at 275. United had notice of Mr. Espinosa's plan and its contents but did not object or file a timely appeal of the confirmation order, in spite of submitting to the jurisdiction of the bankruptcy court by filing a proof of claim. In these circumstances, United "forfeited its arguments regarding the validity of service or the adequacy of the Bankruptcy Court's procedures by failing to raise a timely objection in that court," and its Civil Rule 60(b)(4) motion did not work. Id.

7

Of particular significance in this appeal, the Supreme Court went on to provide guidance to bankruptcy courts as to their duties when confronted with debtor plan provisions that clearly conflict with provisions of the Bankruptcy Code.

> [A] Chapter 13 plan that proposes to discharge a student loan debt without a determination of undue hardship violates §§ 1328(a)(2) and 523(a)(8). Failure to comply with this self-executing requirement should prevent confirmation of the plan even if the creditor fails to object, or to appear in the proceeding at all. . . . That is because § 1325(a) instructs a bankruptcy court to confirm a plan only if the court finds, *inter alia*, that the plan complies with the "applicable provisions" of the Code. . . . [T]he Code makes plain that bankruptcy courts have the authority – **indeed, the obligation** – to direct a debtor to conform his plan to the requirements of §§ 1328(a)(2) and 523(a)(8).

Id. at 277 (emphasis added). Accordingly, the Supreme Court expressed its unanimous view in Espinosa that bankruptcy courts should police chapter 13 plans to ensure that they are consistent with the "clear and self-executing" requirements of the Bankruptcy Code. Id.

We consider the following Bankruptcy Code provisions in this appeal. Section 1325(a)(1) provides in relevant part: "[T]he court shall confirm a [chapter 13] plan if – (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Section 1325(a)(5)(A) provides: "[T]he court shall confirm a [chapter 13] plan if – (5) with respect to each allowed secured claim provided for by the plan – (A) the holder of such claim has accepted the plan." As noted above, § 1325(a)(5)(B) provides an alternative basis for confirming a chapter 13 plan with respect to an allowed secured claim provided for in the plan **if** the secured creditor retains its lien, **and** the allowed secured claim is paid in full in equal

8

periodic payments under the plan.  Section 1325(a)(5)(B)(iii)(II) sets forth a condition to the application of § 1325(a)(5)(B), as follows: if the claim is secured by personal property, "the amount of such [periodic] payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan."

The Trustee argues that the Plan's provision of a six-months delay in commencing equal monthly payments to the Secured Creditors is "in direct violation" of the adequate protection requirement of § 1325(a)(5)(B)(iii)(II), and in light of Espinosa, a "creditor's silence is not acceptance when the plan expressly violates the Code."  The Trustee bases her argument on her conclusion that Espinosa fundamentally altered the rules on secured creditor "silence as acceptance" of a debtor's chapter 13 plan, calling into question pre-Espinosa Ninth Circuit authorities such as Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee), 193 F.3d 1083 (9th Cir. 1999), and Andrews v. Loheit (In re Andrews), 49 F.3d 1404, 1409 (9th Cir. 1995) ("Here, § 1325(a)(5) is fulfilled because subsection (A) was satisfied when the holders of the secured claims failed to object.  In most instances, failure to object translates into acceptance of the plan by the secured creditor."  (citations omitted)).  We note, as argued by the Debtor and as recognized by the bankruptcy court, that there are authorities within the Ninth Circuit (post-Espinosa), and from other circuits (pre-Espinosa) that recognize that failures to object to confirmation of a chapter 13 plan can constitute acceptance for purposes of applying § 1325(a)(5)(A).  See, e.g., Shaw v. Aurgroup Fin. Credit Union, 552 F.3d 447 (6th

9

Cir. 2009); <u>Wachovia Dealer Servs. v. Jones (In re Jones)</u>, 530 F.3d 1284, 1291 (10th Cir. 2008) ("[I]f a secured creditor fails to object to confirmation, the creditor will be bound by the confirmed plan's treatment of its secured claim under § 1325(a)(5). . . . This is because the failure to object constitutes acceptance of the plan." (citations omitted)); <u>In re Rosa</u>, 495 B.R. 522, 524 (Bankr. D. Hawaii 2013) ("The Ninth Circuit and the overwhelming majority of courts hold that a secured creditor's failure to object to a chapter 13 plan constitutes acceptance." (citations omitted)); <u>In re Hill</u>, 440 B.R. 176, 183 (Bankr. S.D. Cal. 2010) ("While Chapter 11 cases provide a mechanism for plan acceptance by creditors, § 1325(a)(5)(B) only applies where the holder of the secured claim objects to the Chapter 13 plan. Acceptance is implied when no objection is raised." (citing <u>In re Andrews</u>, 49 F.3d at 1409)); <u>In re Thomas</u>, 2010 WL 9498475 (Bankr. E.D. Cal. Sept. 13, 2010).

The Trustee retorts in effect that these authorities beg the fundamental question at issue in this appeal: How can a secured creditor's failure to object to a plan provision that is inconsistent with Bankruptcy Code requirements be treated effectively and credibly as acceptance? Fortunately, there are two bankruptcy court decisions that provide helpful analysis.

1. <u>Montoya</u>

In <u>In re Montoya</u>, 341 B.R. 41 (Bankr. D. Utah 2006), the chapter 13 debtor proposed a plan to pay for a car that she purchased within 910 days prior to filing her petition by paying the secured value of the vehicle in full but only a small

10

percentage on the unsecured balance, contrary to the requirements of the "hanging paragraph" found after § 1325(a)(9). Both the debtor and the chapter 13 trustee argued that such treatment of the secured car creditor's claim should be allowed because the secured creditor did not object to the debtor's plan and, consequently, should be deemed to have accepted the plan treatment of its claim under § 1325(a)(5)(A). They further asserted that since the confirmation requirements with respect to secured claims in chapter 13 are set forth in the disjunctive in § 1325(a)(5), the secured creditor's deemed acceptance under § 1325(a)(5)(A) should control despite the unmet requirements of the hanging paragraph with respect to "910-day" vehicles. Id. at 42-43. The bankruptcy court noted that "[t]he majority of courts interpreting the hanging paragraph hold that it precludes a Chapter 13 debtor from using § 506 to cram down a 910-day vehicle," a holding with which the bankruptcy court agreed. Id. at 44.

The bankruptcy court ultimately concluded that the debtor's plan was not confirmable based on the following rationale:

> The Chapter 13 Trustee and the Debtor broadly contend that failure to object to a properly noticed plan constitutes acceptance of the plan. This position overstates the case because the parties improperly combine two significantly different concepts and Code sections. It is correct that, if a plan is properly noticed and otherwise meets the requirements of § 1325(a), the Court may deem a secured creditor's silence to constitute acceptance of a plan and the plan may be confirmed. This "implied" acceptance is allowed because Chapter 13, unlike Chapter 11, has no balloting mechanism to evidence acceptance of a proposed plan, and it is only the negative – a filed objection – that evidences the lack of acceptance. When the creditor simply does nothing, the judicial doctrine of "implied" acceptance fills the drafting gap in the Code. The concept of implied acceptance of an otherwise compliant

11

plan . . . , however, is quite different from proposing a plan intentionally inconsistent with the Code and then waiting for the trap to spring on a somnolent creditor. **Creditors are entitled to rely on the few unambiguous provisions of the BAPCPA for their treatment.** They should not be required to scour every Chapter 13 plan to ensure that provisions of the BAPCPA specifically inapplicable to them will not be inserted in a proposed plan in the debtor's hope that the improper secured creditor treatment will become *res judicata*.

. . .

Section 1325(a)(1) provides that "the court shall confirm a plan if (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title." The parties agree that Menlove Dodge's 910-day vehicle claim cannot be bifurcated, yet the Plan proposes this type of treatment. The Court has an affirmative duty to review and ensure that the Plan complies with the Code even if creditors fail to object to confirmation.

Id. at 45-46 (emphasis added). Thus, the In re Montoya court determined that it could not confirm a plan, even if a concerned secured creditor did not object, if the proposed plan included a provision that was inconsistent with one of the "few unambiguous provisions" of the Bankruptcy Code.

2. Thomas

In a more recent decision, In re Thomas, 2010 WL 9498475 (Bankr. E.D. Cal. Sept. 13, 2010), the chapter 13 debtors submitted a plan that proposed to pay the allowed claims of two creditors with claims secured by motor vehicles without interest. After the trustee objected, the debtors asserted that paying no interest on one of the claims was in error and specified an amended interest rate of 1.9%. As to the other secured claim, 0% interest was consistent with the proof of claim filed by the creditor. Neither motor vehicle secured creditor objected to its proposed treatment under the debtors' plan, and the debtors

12

argued that confirmation in these circumstances was appropriate because the secured creditors' failure to object should be deemed acceptance for purposes of § 1325(a)(5)(A). The trustee, as in this appeal, opposed confirmation on the ground that the proposed plan did not comply with the requirements of § 1325(a)(5)(B), as it did not provide for a rate of interest to the motor vehicle secured creditors that would compensate them "for the delay in paying their claims in full," i.e., the proposed plan did not provide adequate protection to the personal property secured creditors by not providing that the secured creditors would receive the present values of their allowed secured claims. Id. at *1.

While the bankruptcy court ultimately determined that it could not confirm the debtors' plan because notice to the motor vehicle secured creditors was inadequate, it addressed the adequate protection issue raised by the trustee's objection in light of Espinosa.

> The [Supreme] Court characterized the requirement for a determination of undue hardship to discharge a student loan debt as "self executing" and stated that failure to comply with that requirement should prevent confirmation of a plan even if the creditor fails to object. . . . But is the requirement for provision of present value in the absence of acceptance of a chapter 13 plan by a secured creditor the kind of compliance about which the court in Espinosa was speaking?

Id. at *4. As in In re Montoya, the bankruptcy court in In re Thomas concluded that it was making a decision that involved the application of two different concepts. Id. at *5. First, § 1325(a)(5) provides three alternatives to allow for confirmation of a chapter 13 plan as it deals with allowed secured creditor claims, and one of those alternatives is to

13

treat a secured creditor's failure to object as acceptance for purposes of § 1325(a)(5)(A). However, in some cases, application of that alternative is not compatible with

> the idea that a plan intentionally inconsistent with the Code ought not to be confirmed even in the absence of objection. Good examples are a plan that attempts to discharge a student loan claim without a proper proceeding to determine undue hardship and a plan that improperly bifurcates a 910 claim into a secured and an unsecured portion. Another example is a plan that provides for payments over a period that is longer than five years in contravention of Bankruptcy Code § 1322(d).

Id. The bankruptcy court recognized that the "adequate protection" provision in § 1325(a)(5)(B)(iii)(II) is different from such clear and "self executing" provisions. "The requirement of present value is not self executing. It requires evidence and it requires proof." Id. at 6.

We agree with the analysis of the bankruptcy court in In re Thomas as it considered adequate protection. Congress provided some guidance as to what could constitute "adequate protection" in § 361:

> Adequate Protection. When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –
>     (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>     (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>     (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such

14

entity of the indubitable equivalent of such entity's interest in such property.

However, nothing in § 361 provides any guidance as to the timing to provide adequate protection, and the reference to "adequate protection" in § 1325(a)(5)(B)(iii)(II) adds nothing to assist us in determining what "adequate protection" means in a particular case.

In Paccom Leasing Corp. v. Deico Electronics, Inc. (In re Deico Electronics, Inc.), 139 B.R. 945 (9th Cir. BAP 1992), the Panel specifically considered the question of "the appropriate 'begin' date for adequate protection payments contemplated by the bankruptcy code" in a chapter 11 case. Id. at 946. The Panel analyzed the issue as follows:

> The bankruptcy code does not specifically provide for a date upon which adequate protection payments should commence, but the purpose of adequate protection lends assistance to that inquiry. In United Saving Association v. Timbers of Inwood Forest, 484 U.S. 365 . . . (1988), the Supreme Court held that undersecured creditors are entitled to adequate protection to compensate them for the depreciation in their collateral. Adequate protection prevents creditors from becoming more undersecured because of the delay that bankruptcy works on the exercise of their state law remedies.

> Accordingly, adequate protection analysis requires the bankruptcy court to first determine when the creditor would have obtained its state law remedies had bankruptcy not intervened. Presumably, that will be after the creditor first seeks relief. The court must then determine the value of the collateral as of that date. This is consistent with Collier's admonition that value should be determined as of when the protection is sought.

> The amount by which the collateral depreciates from that valuation is the amount of protection adequate to compensate the creditor for the loss occasioned by bankruptcy. But collateral may not always depreciate according to a precise monthly schedule. Moreover, requiring a lump sum of past due

15

protection could suffocate a debtor otherwise able to reorganize.

Therefore, while the amount of adequate protection to which an undersecured creditor is entitled is equal to the amount of depreciation its collateral suffers after it would have exercised its state law remedies, **neither that determination nor the schedule for its tender are appropriate for application of a rigid formula. Instead, the bankruptcy court must have discretion to fix any initial lump sum amount, the amount payable periodically, the frequency of payments, and the beginning date, all as dictated by the circumstances of the case and the sound exercise of that discretion.**

Id. at 947 (emphasis added). We reiterated the conclusion of the Panel in Deico that the bankruptcy court has broad discretion to fix the commencement date for adequate protection payments in our en banc disposition in People's Capital and Leasing Corp. v. Big3D, Inc. (In re Big3D, Inc.), 438 B.R. 214, 222, 224 (9th Cir. BAP 2010) (en banc). Accordingly, the timing for commencement of adequate protection payments is a fact-based determination depending on the circumstances of a particular case.

3.   This Appeal

In this case, the Plan provides for a six-month delay in the commencement of payments to the Secured Creditors. However, the Plan further provides for the payment in full of the allowed secured claims of the City of Oakland, the FTB and the IRS well within the sixty-months term of the Plan. With no objection filed by any of the Secured Creditors, the bankruptcy court had no way of knowing whether the Secured Creditors were satisfied that the payments proposed by the Debtor in the Plan provided them with adequate protection or whether the amounts involved and/or the risk of nonpayment in light of the proposed six-months delay in commencing payments simply did not justify the costs

16

entailed in filing and prosecuting objections to confirmation of the Plan, and neither do we. However, we conclude, consistent with In re Thomas, that the provision for "adequate protection" in § 1325(a)(5)(B)(iii)(II) is not the type of clear, "self executing" provision of the Bankruptcy Code that would preclude the bankruptcy court from translating the Secured Creditors' failures to object to confirmation as acceptance for purposes of § 1325(a)(5)(A) and confirming the Plan as consistent with the requirements of § 1325(a)(1), under Espinosa.[2]

CONCLUSION

Based on the foregoing analysis, we AFFIRM the orders of the bankruptcy court overruling the Trustee's objection to confirmation of the Plan and confirming the Plan.

---

[2] Having concluded that the adequate protection provision in § 1325(a)(5)(B)(iii)(II) is not a clear, "self-executing" requirement of the Bankruptcy Code within the meaning of Espinosa, we do not consider further the argument that § 1325(a)(5)(A)'s express inclusion of secured creditor consent as a possible basis for confirmation, standing alone, also or independently supports affirmance.